## ELLIS v. CRAMTON & CHAFFEE.

*Notice by Guardian of Spendthrift. Gen. Sts. c. 72, s. 50.*

The provisions of s. 50, c. 72, Gen. Sts., requiring the guardian of a spendthrift to post notice of his appointment, &c., in three public places in the town where the ward or his wife and children reside, must be strictly complied with, to enable the guardian to avoid contracts made by the ward with persons ignorant of his disability.

TROVER for a pair of stags. Plea, general issue, and trial by jury, September Term, 1877, ROSS, J., presiding.

The plaintiff, to prove that he was guardian of James Smith, produced his original letters of guardianship, and testified that he received it from the Probate Court for the District of Rutland. The defendants objected thereto, for that the fact of the guardianship could be proved only by certified copies of the probate record. But the court ruled that the letter was *prima facie* evidence, and admitted it; to which the defendants excepted.

It appeared that Smith was under guardianship as a spendthrift, but that the plaintiff posted no public notices of his appointment, nor lodged nor procured to be recorded a copy of the application for appointment of a guardian, in the town clerk's office, agreeably to the requirements of the statute.

It further appeared that in June, 1876, the plaintiff, in his capacity of guardian, bought the cattle in question, with funds belonging to his ward, and delivered them to him, to use at work for various persons, to enable him thereby in part to support himself, telling him that he could have the use of the cattle for that purpose, and could collect the pay for their use, and take care of them, but that he was to have no other or further control of them, and that the guardian could take them away when he saw fit; that early in July, Smith took the cattle to Rutland and sold them for a fair price in money which he received of the defendants, they having no knowledge of him or that he was under guardianship, and there being nothing in his appearance to indicate to a stranger that he was incapacitated from making a binding contract; that Smith left the vicinity for a while, and squandered all the money; that on July 27, 1876, the plaintiff demanded the cattle of the defendants, who told him he could take them if he chose, but that if he did they should sue him for them; and that the defendants afterwards sold the cattle and received the money for them.

None of these facts were controverted, and neither party desired to submit them to the jury. But they were at variance in regard to the value of the cattle, and that question was submitted to the jury in a manner not excepted to. The jury found the cattle worth $80 when demanded.

The defendants claimed that the plaintiff could not recover,— both because of his failure to give the statutory notice of his appointment, and because the surrender of the possession of the cattle to Smith, under the circumstances stated, gave him an absolute or implied power to sell them and take the pay therefor. The court rendered judgment, *pro forma,* for the plaintiff to recover $80, with interest from July 27, 1876, and his costs; to which defendants excepted.

77

*Prout & Walker*, for the defendants.

A spendthrift is still *sui juris*. His incapacity to contract for himself is statutory only. The steps provided by law must be strictly followed, in order to entitle the guardian to interfere. Gen. Sts. c. 72, ss. 16, 50; Pot. Dwar. Stat. 146; *Culver* v. *Hayden*, 1 Vt. 359.

But the guardian put his ward in possession of the stags in such a way as to make the ward his agent. He voluntarily surrendered his statutory right to the care and control of the property, and took his own risk as to the disposition the ward might make of the cattle.

Even a lunatic may make a binding contract. *Molton* v. *Camroux*, 2 Exch. 487. The same rule applies to contracts of infants. *Farr* v. *Sumner*, 12 Vt. 28; *Taft* v. *Pike*, 14 Vt. 405; *Weed* v. *Bebee*, 21 Vt. 495.

The Probate Court acquired no jurisdiction for the purpose of appointing a guardian unless due notice of the application was given. Of that no proof was made, and there was therefore no sufficient legal evidence that the plaintiff was the guardian of Smith. *Corwin* v. *Merritt*, 3 Barb. 341.

*J. B. Phelps*, for the plaintiff.

The letter of guardianship was properly admitted in evidence. *Newman* v. *Jenkins*, 10 Pick. 515; *White* v. *Palmer*, 4 Mass. 147; *Seymour* v. *Beach*, 4 Vt. 493; *Wadsworth* v. *Sherman*, 14 Barb. 169.

The surrender of possession of the cattle to Smith, gave Smith no power to make a valid sale of them. *Leonard* v. *Leonard*, 14 Pick. 280.

The failure to lodge a copy of the application for guardianship in the office of the town clerk in accordance with the statute is not material. The sole object of that provision is to render null and void all transfers made while the proceeding is pending and before adjudication. It is a notice *pendente lite* for the purpose of keeping the ward's property in the same condition while the application is pending.

The failure to give notice of appointment agreeably to the statute

is no defence.   The provision of the statute as to posting notices is directory.   *Wood* v. *Chapin*, 13 N. Y. 509.   Besides, the records of the probate court are open and every person is bound to take notice thereof.

The opinion of the court was delivered by

POWERS, J.   By the provisions of c. 72, Gen. Sts., the Probate Court is authorized to appoint guardians over spendthrifts who are wasting their estates so as thereby to expose their families to want or the town of their settlement to charge.

The jurisdiction that seizes upon the property or liberty of the citizen guiltless of crime and subjects it to the control of others, is one of strict right, and involves technical compliance with all the essential conditions upon which it is founded.

Smith, the ward, was of full age, had all the mental capacity necessary to the making of contracts; had the rightful possession of the cattle; in short, was clothed with the indicia of ownership and capacity that would warrant persons to deal with him.   He demanded and received the full value of the cattle.   His capacity to make contracts is not questioned, but his incapacity to retain their fruits is his weakness that justifies the action of the Probate Court.   The object of the statute that authorizes guardianship in such cases is, to protect the public against the ulterior consequences of the ward's folly.   But the Legislature has not overlooked the fact that the interests of third persons are involved, and hence guards are thrown around them by requiring publicity in the proceedings.

The guardian is required, as soon as may be after his appointment, to post up notices of his appointment in three public places in the town of the ward's residence, which notices shall declare that the contracts of the ward will be held void.   It is true, a subsequent clause of the same section declares that all contracts of the ward made after the appointment of the guardian shall be void; nevertheless, the whole section is to be read together, and effect given to the whole of it if possible.

The Legislature had some object in view in requiring notices to be posted, and that object can only be the protection of innocent persons who may deal with the ward.

This view of the statute is supported by the provisions of s. 16, which declares that the contracts of the ward shall be void pending the application for the appointment of a guardian, if a copy of the application for such appointment be lodged in the town clerk's office, and a memorandum thereof be recorded. Thus the invalidity of the ward's contracts in this section is made to depend upon the giving of this notice. Neither the notice prescribed in s. 16 nor the one required in s. 50 was given in this case.

We think the requirement of public notice in s. 50 must be complied with by the guardian, if he would nullify the contracts of his ward made with persons having no knowledge of his disability.

The construction we give to the statute amply protects the estate of the ward in accordance with the purposes of the Legislature; gives effect to all its requirements; and operates justly upon the rights of third persons.

Judgment reversed, and judgment for the defendants.